###### AND THE

## CORRECTION OF ERRORS

###### OF THE

## STATE OF NEW-YORK,

#### IN MARCH AND APRIL, 1816.

Mary Mann, Daniel D. Tompkins, Henry Brevoort, and James Varian, } *Appellants.*

*against*

Michael Mann, jun., and others, *Respondents.*

*DAVID MANN*, late of the city of *New-York*, deceased, by his last will and testament, made and published on or about the 9th of *March*, 1810, after directing his just debts and funeral expenses to be paid, bequeathed unto his niece, *Mary Cornell*, 1,000 dollars, to be paid out of his personal estate; he then devised unto his wife, *Mary Mann*, in fee, the dwelling-house which he then occupied, and six acres of land, situate fronting to the *Bowery* Road and *Broadway*, in the eighth ward of the city of *New-York*, together with two other lots, in the said eighth ward, containing an acre and a half: he also gave and bequeathed unto his said wife, *all the rest, residue, and remainder of the moneys belonging to his estate at the time of his decease,* and, also, his negro slaves, named, &c., and all his household furniture, horses, farming stock, utensils, and riding

The intention of a testator must be collected from the will itself.

Parol evidence is inadmissible to explain, vary, or enlarge the words of a will, except in the case of a latent ambiguity, or to rebut a resulting trust.

Where the testator bequeathed to his wife *all the rest, residue, and remainder of the moneys belonging to his estate at the time of his decease,* it was held, that the word *moneys* must be taken in its ordinary acceptation, and meant only *cash,*

and did not comprehend bonds, mortgages, and other *choses* in action; there being nothing in the will itself to show that the testator intended to use it in that extended sense.

Nor were the declarations of the testator, or a reference to the state of his property admissible to show a different intent.

A will is to be so construed that all the parts of it may be effectual and consistent; and an ambiguity apparent on the face of it cannot be removed by parol proof.

Where a false or inapplicable description is annexed to a subject certain without the description, it is to be rejected.

That construction will be most favoured which will prevent a total failure of a bequest, if specific; but the full force of this rule does not apply to a residuary clause.

Proofs are allowed to be read, in equity, without prejudice, subject to all just exceptions, but at law improper evidence ought not to be allowed to be produced.

Vol. XIV.                    A

IN ERROR.
........
ALBANY,
April, 1816.

MANN
v.
MANN.

chair; which several devises and bequests were to be in bar of her right of dower. He then bequeathed to his niece *Mary*, the daughter of his brother *Michael*, 500 dollars, to be paid to her, or to her lawful issue, in case of her decease, out of the moneys arising from the sale of the residue of his real estate; and in case of her death, before receiving the same, without lawful issue, then to her brothers and sisters, equally to be divided. The residue of his estate, both real and personal, he devised and bequeathed to the children of his brother, *Michael Mann*, (including his said daughter *Mary*,) and of his late brothers, *George Mann*, and *Matthias Mann*, both deceased, in fee, equally to be divided among them; and, after empowering his executrix and executors to sell and dispose of the residue of his real estate, appointed the appellants his executrix and executors.

The respondents, who are the children of the testator's brothers, and the residuary devisees and legatees under his will, filed their bill in the court below, against the executrix and executors for a discovery and account. The bill charged, *inter alia*, that the testator, at the time of his death, was possessed of a personal estate of the value of 20,000 dollars, over and above the moneys belonging to him, and beside his household furniture, farming stock and utensils, and riding chair, and the money that might be due from his brother *Michael Mann*, consisting of promissory notes, bonds, mortgages, and other securities for money, and other outstanding debts, and of slaves and personal property of various descriptions, unknown to the respondents; and that the appellants, or some of them, had taken possession of the residuary personal estate, and converted the same to their own use.

The appellants stated in their answers, that they caused an inventory to be made of the goods, chattels, and credits of the deceased, which contains a true account of the personal estate of the testator, except that the debt due from *Michael Mann* to him, a mortgage to secure the payment of one of the bonds mentioned in the inventory, his watch, and wearing apparel, and two small debts were omitted to be inserted; that the goods and chattels mentioned in the inventory, including the specific legacy to *Mary Mann*, amounted in value, at the making thereof, to 1,968 dollars; the goods and chattels not bequeathed to her amounted in value to 526 dollars and 50 cents, or thereabouts; the amount due upon the several securities for the

IN ERROR.
.........
ALBANY,
April, 1816

MANN
v
MANN.

payment of money, including the interest accrued thereon to the time of making the inventory, amounted to 13,735 dollars and 80 cents; and the ready money, or cash, in the house of the testator, at his death, amounted to 500 dollars; that the securities for the payment of money remained in the hands of the appellant, *Mary Mann*, with the assent of the other appellants, and believing the intent of the will to be, that those securities should be the property of *Mary Mann*. and knowing from the declarations of the testator, made to the appellants, *Mary Mann* and *Daniel D. Tompkins*, that such was his intent and meaning, they declined accounting with the respondents touching the said securities; that the appellant, *Mary Mann*, had paid funeral expenses and debts to the amount of 545 dollars and 71 cents, and that there remained unpaid 195 dollars and 15 cents, or thereabouts; that the lands devised to *Mary Mann*, independent of the dwelling-house, and the barn and out-houses appertaining thereto, would not rent for an annual sum exceeding 170 dollars, even if laid out into building lots and rented; that the testator supported his family principally from the income arising from his moneys at interest; and that the sum of 500 dollars, in his house at his death, in cash, was received by him shortly before his death, and was not, nor was any part thereof, in his possession at the time of making his will.

Replications having been filed to the answers, several witnesses were examined on the part of the appellants, to show the intention of the testator to leave his securities for money to his wife, apparent from his declarations, previous to making his will, and from the circumstances of his having principally supported his family on the interest accruing from these securities, and of his having borrowed money at various times, and taken up part of the principal money of one of his mortgages, for his family expenses, and from the inconsiderable annual value of the real property devised to her.

On the 27th of *September*, 1815, the chancellor decreed, that the parol evidence to control and explain the will of the testator was wholly inadmissible; that it must be read and expounded by itself, and must operate upon the personal estate of the testator as it existed at the time of his decease; and directed the appellants to account before a master for all bonds, mortgages, notes, and *choses in action* belonging to the testator at the time

IN ERROR.
......
ALBANY,
April, 1816.

MANN
v.
MANN

of his death, to be charged with such sums as they had received, or as had been lost by their neglect or default, and to be credited for all payments, charges, and expenses justly chargeable to the assets of the testator. And it was further ordered, that should any of the said bonds, &c. remain uncollected and undisposed of in the hands of the appellants, they should cause them to be collected, and pay over the money to the complainants, according to their respective interests, reserving the question of costs, and all other questions, until the coming in of the report. An appeal was entered from this decree by the defendants in the court below. For the reasons of the chancellor, see 1 *Johns. Ch. Rep.* 233—239.

*Van Vechten*, for the appellants. It is contended, that, according to the true and just construction of this will, considered by itself, the bonds and mortgages passed to the appellants. The rules in regard to the construction of wills are, that they must, and ought to be, construed liberally and benignly, not technically ; but the object should be to ascertain the meaning and intent of the party. Where a doubt arises as to one part of the will, we may resort to other parts to discover the intent and meaning of the testator. To apply these principles to the present case : Here the testator bequeaths to his wife *all the rest, residue, and remainder of the moneys belonging to his estate at the time of his decease :* Those parts of his will respecting the payment of his debts, and of the legacies to his nieces, *Mary Cornell* and *Mary Mann*, show, that he intended that all his bonds and other securities for money should go to his wife after the payment of his debts, and the legacy to *Mary Cornell*. The legacy to *Mary Mann* was charged upon his real estate ; which shows his design to render the bequest of the personal property ample and beneficial for the advantage of the legatee ; and the debts being more than sufficient to absorb the cash on hand, and the legacy to *Mary Cornell* being payable out of the personal fund, the residuary legacy to the testator's wife must extend to all the residue of the personal property, otherwise there will be nothing to which it can apply. The chancellor admits, in his opinion in the court below, that bank notes, or a deposit with a banker, will pass under the term *money*. What is a bank note but a *chose in action*, a promise to pay money to the bearer ? What right does a deposit of money in a bank confer,

but that of bringing an action, if it be not paid, to the order of the depositor ? It is a debt due from the depositary. Surely, then, it must be immaterial whether this obligation, this promissory note, be a security made in one manner, for one purpose, or in a different form, and for another object ; whether it be received from a private individual, or an incorporated company. The chancellor admits, too, that a lease for years will pass under a devise of all the testator's lands, if he had no fee-simple estate ; that is, that we may include in the real estate a chattel interest, an interest of a distinct species, to prevent the devise from being ineffectual and nugatory. With still more reason, according to this admission, may we urge, that the words in the will ought to be extended from property of one description, but of the same nature and kind, to property of another—from a chattel *in possession*, to a chattel *in action ;* for, unless this construction be adopted, the bequest will be altogether inoperative.

But if the fair interpretation of the will be against us, still there can be no doubt as to the intention of the testator ; the testimony shows, that he did not intend to deprive his wife of the most productive part of his property, and which was essentially necessary for her maintenance. That the evidence was admissible for this purpose, it next remains to be proved.

Here there is a doubt arising, *dehors* the will, as to what passed by the legacy ; this is a latent ambiguity, and, as such, parol evidence is admissible to establish the intent of the testator.* It is a settled doctrine that parol evidence may be admitted to explain a latent ambiguity of the testator, in disposing of his personal property, and to ascertain the person to whom, or the fund out of which, the legacy is to be paid.† In *Beaumont* v. *Fell*,‡ *Clarke* v. *Norris*,§ and *Thomas* v. *Thomas*,‖ parol evidence was admitted to show a mistake in the name of the legatee or devisee. In the last-cited case, Lord *Kenyon* conceded that declarations of the testator, at the time of making the will, were admissible in evidence. In Lord *Walpole* v. Lord *Cholmondely*,** Lord *Kenyon* says, that " where extrinsic circumstances, let in by parol testimony, explaining the situation of the testator's family, and of the legatees, introduce a doubt of the testator's intention, the same kind of evidence that introduced the doubt, may be admitted to explain it." In *Drew* v. *Davison*,†† the chancellor admits that parol evidence

IN ERROR.
........
ALBANY,
April, 1816.

MANN
v.
MANN.

* 5 Co. 68. Rob. on Frauds, 15, 16, 17.

† Pre. Ch. 229. 2 P. Wms. 135. 140. 2 Vern. 517. 593. 2 Ves. 276. 1 Bro. Ch. Rep. 472. 474. 3 Bro. Ch Rep. 466. 1 Dick. 360.
‡ 2 P. Wms. 141.
§ 3 Ves. 362.
‖ 6 Term Rep. 671.

** 7 Term Rep. 144.

†† 6 Ves. 397.

*IN ERROR.*
........
ALBANY,
*April, 1816.*

MANN
v.
MANN.

\* 1 *Bro. Ch.*
*Rep.* 127.

† *Dom. Civ. Law,*
*b.* 4. *tit.* 2. *s.* 4.
*Amb.* 69. 3 *Atk.*
232 1 *Ves.* 273.
15 *Ves.* 324. *God.*
*Orph. Leg.* 417,
418
‡ 1 *Sch. & Lefroy.*
318.
§ 1 *Bro. Ch. Rep.*
127.

‖ *Rob. on Frauds,*
19.

\*\* *Rob. on*
*Frauds,* 15. 20.
n. 8. 2 *Vern.* 593.
5 *Ves.* 79. 1 *Ves.*
231. 2 *Atk.* 239.

†† 1 *Bro. Ch.*
*Rep.* 472. 2 *Atk.*
373. 3 *Ves.* 308.

‡‡ *Ambl.* 175. 6
*Term Rep.* 678.
1 *P. Wms.* 420.

ought to be received to explain what is parcel of the premises granted or conveyed.

*B. Robinson* and *Oakley,* contra. The words of a will must be construed according to their legal signification, unless something appears on the face of the will to render a mere popular construction necessary.\* The term *money,* in its strict legal acceptation, comprises only specie, though, in common parlance, it includes bank notes ; and the furthest that the decisions have ever gone, has been to extend it to bank notes, and money in the hands of a banker ; but to bonds, and other securities, it has never been applied, for these are not money, but the evidences of debts.† In *Fleming* v. *Brook,*‡ it was held, on the authority of *Moor* v. *Moor,*§ that a legacy of all the testator's property, in a certain house, except a particular bond, did not, notwithstanding the exception, pass another bond and other securities, though bank notes would have passed, they being *quasi* cash. The words, *belonging to my estate,* which the testator has added to the legacy of his *moneys,* imply nothing more than a designation of his property in the thing bequeathed. The will itself, on the face of it, presents no uncertainty as to the intention of the testator, and the case shows that there was a subject, actually existing, upon which the legacy could operate. The respondents are heirs at law, therefore, to be favoured, and an ample provision was made for the wife, exclusive of the specific legacy of personal property, and of the realty.

It is a general rule that parol evidence is inadmissible to explain, vary, or contradict, written instruments.‖ To this rule there are very few exceptions, the principal of which is the case of a latent ambiguity. A latent ambiguity is when the obscurity which it is sought to remove, arises from extrinsic circumstances ;\*\* as where there are two persons, or two things, to each of which the description will equally apply, there we may resort to parol proof to explain the doubt. And so where the will itself furnishes occasion for doubt, an inquiry into the situation of the testator, or his property, has been allowed ;†† or where there is a mistake in the name of the legatee, no person of the name mentioned in the will coming to claim the legacy,‡‡ there the evidence is admitted in order to prevent the will from being inoperative, or, by showing the real intention, to rebut or sup-

port a legal presumption.* But it is inadmissible to contradict the words of the will,† or to supply an omission of the testator;‡ nor is any regard to be had to expressions, before or after making of the will, which, as was said in *Strode* v. *Russel*,§ possibly might be used, by the testator, on purpose to conceal, or disguise, what he was doing, or to keep the family quiet, or for other secret motives and inducements. The present case comes within none of the exceptions to the general rule. In *Brown* v. *Selwyn*,‖ the parol evidence was decisive, that the testator intended that a bond made to him, by one of his two executors and residuary legatees, should be extinguished, but that the attorney, who drew the will, neglected to mention it, supposing that it would be released by the obligor's being appointed executor; Lord *Talbot*, however, held, that the parol evidence was inadmissible, and that, under the general residuary clause, the obligor was accountable to his co-legatee for a moiety of the sum due. This is a very strong case to show the jealousy of courts against the introduction of parol evidence ; it was not permitted to the obligor to repel an equitable presumption, by, at the same time, supporting a legal presumption in his favour. So, in *Jackson* v. *Sill*,** the evidence of the counsel who drew the will, to show a mistake on his part, and thus extend the devise to other land, was rejected; and it was there held, that where the intention is clear and certain, and no repugnancy appears between the different parts of the will, it is improper to resort to other parts to ascertain the intention of the testator. But if there be a latent ambiguity, still the parol evidence is inadmissible, because the will may have a practical operation without it.†† In *Dobson* v. *Waterman*,‡‡ where the testator gave 700 pounds out of his bank stock, and it appeared that he had no bank stock, but was possessed of south sea stock, the legacy was established out of the latter fund; otherwise the will would have been ineffectual, having no subject upon which to act ; besides, in that case, the legacy was certain, and of a specific sum, whereas here it is uncertain, of the residuum of his moneys, which must necessarily always be contingent. In *Doe* v. *Brown*,§§ and in *Jackson* v. *Sill*, before cited, the testator had property answering to the description in the will, and, therefore, evidence to extend the devise was rejected; and this doctrine is fully confirmed by the case of *Doe* v. *Oxenden*.‖‖ *Mansfield*, Ch. J., alluding to several of the cases in which

IN ERROR.

ALBANY,
April, 1816.

MANN
v
MANN.

* 7 *Ves.* 229. 5 *Ves.* 79. 2 *Ves.* 28. 2 *P. Wms.* 158.
† 2 *Ves.* 216. *Rob. on Frauds*, 12.
‡ 2 *Vern.* 624. 1 *Bro. Ch. Cas.* 84. 2 *Freem.* 62. *Str.* 1261. 11 *Johns. Rep.* 215, § 2 *Vern.* 624. ‖ *Cas. temp. Talb.* 240.

** 11 *Johns. Rep.* 205.

†† 1 *Ves.* 415. 1 *Eq. Cas. Abr.* 230. *pl.* 2. ‡‡ 3 *Ves.* 308. n.

§§ 11 *East's Rep.* 441.

‖‖ 3 *Taunt.* 147.

IN ERROR.
......
ALBANY,
April, 1816.

MANN
v.
MANN.

parol evidence was received, observes, " it is not expressly said in any of these cases, that it was necessary to receive the evidence, in order to give effect to the will, which would not operate without such evidence. But although this is not said, yet the rule seems to hold. It will be found that the will would have had *no* operation, unless the evidence had been received. Here, without the evidence, the will has an effective operation."

*T. A. Emmet*, in reply. The testator himself has shown the construction which he put upon the word *moneys ;* for, if he did not intend to leave his wife the bonds and mortgages, he will have left her nothing productive of income. The word *moneys,* in its general acceptation, is used only to express *choses in action ;* it is not the plural of money, which is a collective term, and, therefore, needs no plural. If such be not the sense of the term, still the case shows that the testator has misdescribed the subject bequeathed ; for, unless it include the bonds and mortgages, there will be nothing upon which the legacy can operate.

But the intention of the testator is put beyond doubt, by the parol evidence, and the cases show that there was such an ambiguity as to authorize the admission of extrinsic proof.* In *Selwood* v. *Mildmay,†* the testator gave part of his bank annuities to his wife, and evidence was admitted that he had no such stock at the date of the will, having previously sold it, and invested it in other stock, and the cause of the mistake being shown, the legacy was established out of the testator's personal property. " I have no difficulty," says the master of the rolls, " in saying that a latent ambiguity arises from the testator's circumstances not being sufficient to meet the legacy he had given. This is a provision for his wife; which makes it a strong case. The court would struggle in opposition to a construction against the wife upon a mere mistake. There is no ambiguity upon the will. Then the question is, whether the court is not bound, by every rule, to admit evidence where there is no ambiguity upon the will." *Fonnereau* v. *Poyntz,‡* previously decided, is strongly to the same effect. There specific sums in stock were given to the legatees, and an inquiry into the state of the property of the testatrix was permitted to show that she meant gross sums of money, and not annuities to the amount of the sums named. The chancellor seemed to think that although

*1 Ves. jun. 259.
3 Ves. 308. n.
2 Vern. 593.
2 Rop. Leg. 319.
† 3 Ves. 306.

‡ 1 Bro. Ch. Cas. 472.

the words of immediate description contained no ambiguity, but were adapted to express an annual sum, yet that other parts of the will, and the context, in general, furnished ground of argument, and a species of doubt, which warranted the admission of collateral evidence to explain it; and that the statement of the fortune of the testatrix was applicable to the purpose of such explanation. Upon this case *Roberts** observes, that it " supplies an additional proposition in the theory of evidence, viz., that where there is neither *ambiguitas patens* nor *latens* in the particular passage in controversy, but the words are clear, and there is a proper subject for their application, yet, if there is another subject to which this application is less direct, and the context of the will points to this latter construction. the door is open to the admission of exterior evidence, to second and confirm this collective inference against the literal expression of the particular clause or sentence." In the present case, the will, upon the face of it, raises, at least, a doubt as to the application of the term *moneys ;* and it is not universally true that evidence may not be admitted to explain a patent ambiguity in a will.† In *Ulrick* v. *Litchfield*,‡ there was an ambiguity which was allowed to be explained by parol proof. Declarations of the testator, before, at, or after the time of making his will, are admissible to explain his intention.§ Extrinsic evidence may be admitted to explain the intention of the testator so as to raise a case of election.‖

IN ERROR.
.......
ALBANY,
April, 1816.

MANN
v.
MANN.

* On Frauds, 33.

† 1 Ves. jun. 142.
Rob. on Fraud.,
26.
‡ 2 Atk. 372.

§ Rob. on Frauds.
38. n. 14.

‖ Id. 42.

THOMPSON, Ch. J. The decision now to be made does not depend so much upon ascertaining and defining the rules and principles of law involved in the discussion, as in a just and correct application of those rules and principles to the case before us. That the intention of the testator is to be sought after and carried into effect ; that such intention is to be collected from the will itself, unaided by any extrinsic evidence, except in the case of a *latent ambiguity*, or to rebut a resulting trust; and that no parol evidence is admissible to contradict, enlarge, or vary the words of a will, are general rules so well settled, that they may be assumed as elementary principles of law. A correct application of them to this case will, in my judgment, lead to an affirmance of the decree.

The particular clause in the will of *David Mann*, upon which the question turns, is in these words , " I do give and bequeath

*IN ERROR.*
......
ALBANY,
April, 1816.

MANN
v.
MANN.

unto my said wife, *Mary Mann,* all the rest, residue, and remainder of the *moneys* belonging to my estate, at the time of my decease." Whether, under this bequest, *Mary Mann* is entitled to all the bonds, mortgages, notes, and *choses in action,* belonging to the estate of the testator, or only to the *cash* left, is the question between the parties. It was not pretended by the appellants' counsel, that there was any ambiguity, or uncertainty, in the term *moneys.* Indeed, such a pretence would have been utterly inconsistent with the claim to let in parol evidence ; for if there was any such uncertainty, it would have been a *patent ambiguity,* which is, confessedly, not explainable by extrinsic evidence. But it was contended that the qualifications accompanying, and superadded, to the term *moneys,* either showed that the testator intended to use it in a sense different from the ordinary, or legal, acceptation, or referred to a fund other than that created by his cash.

In examining into the intention of a testator, in any particular clause of his will, it is, no doubt, proper to gather all the light that can be thrown upon it, by comparing and explaining it with other parts of the will, so as to make the whole consistent, and all the provisions, if possible, to harmonize together. But when we are collecting the intention of the testator from the will itself, we ought to guard against the influence which the extrinsic evidence offered may have upon the mind, if such evidence was inadmissible. In courts of equity, those parol proofs are generally permitted to be read without prejudice, subject to all just exceptions. But at law, where the jury might, and probably would be, influenced by the admission of improper evidence, the production of it will not be allowed. (*Prec. in Ch.* 104.) Let us, then, look at the will, *per se,* as if no parol evidence had been offered, and see whether a doubt could exist as to the construction of this will. If we had never heard that the testator had money out at interest upon bonds and mortgages, could it enter into the mind of any man, upon looking at the clause in the will under consideration, that *moneys* meant any thing more than *cash ;* or that it would extend to *choses in action.* It has, however, been said, that the words, *rest, residue, and remainder,* are relative terms, referring to an antecedent ; and which antecedent must have been a fund, not coming within the ordinary acceptation of the term moneys. That they are relative terms is undoubtedly true ; but the con-

IN ERROR
* * * * * *
ALBANY,
April, 1816
MANN
v.
MANN.

clusion attempted to be drawn from this by no means, follows. The testator, previous to the clause in question, had directed all his just debts and funeral charges to be paid, and had bequeathed to his niece, *Mary Cornell*, one thousand dollars. His debts and funeral charges are not directed to be paid out of any particular fund. The moneys left by him would be the fit and proper fund to be resorted to for the purpose, and the one most likely to be in view by the testator, especially as the funeral expenses would require an immediate expenditure. The words " rest, residue, and remainder," are, therefore, satisfied, by referring them to the money as the fund. But the legacy to *Mary Cornell* is expressly directed to be paid out of his *personal estate*. And it would be a very strained interpretation to say that the testator used the words *personal estate* in the same sense as the term *moneys ;* and, unless he did, this legacy could not have been intended to be charged upon the money fund. His charging this legacy upon the *personal estate, generally,* shows, that when he used the word moneys, he meant and intended to use it in its usual and ordinary acceptation. Suppose the testator had left cash sufficient to pay this legacy, over and above his debts and funeral expenses, and had left other personal estate sufficient to pay the legacy, can there be a doubt but that the money would have been considered as a specific bequest, and the legacy chargeable upon the other part of the personal estate ? The words, " rest, residue, and remainder," are, therefore, satisfied by referring them to his cash, the natural fund for payment of debts and funeral expenses, where no specific directions are given.

There is nothing whatever in the will, requiring, or even affording, a rational conclusion that the legacy to *Mary Cornell* was intended to be charged upon the cash fund. Nor has the testator, in any part of his will, used the term *moneys* in any other than its ordinary and appropriate sense. Thus, in relation to his demand against his brother *Michael*, he discharges him from the *payment* of all *moneys* which he shall *owe* him at the time of his decease. This necessarily, and unavoidably, refers to an outstanding debt. When we speak of the payment of money which one owes, it is impossible to misunderstand, or to give any other interpretation to the expression, than as having reference to a debt due. So, where he speaks of the *moneys* arising from the sale of his real and per-

IN ERROR.
......
ALBANY,
April, 1816.

MANN
v.
MANN.

sonal property, he uses the term in its ordinary acceptation. Again; he authorizes his executors to sell his real estate for the most *moneys* that can be got for the same, which is as apt and appropriate a use of the term as could be made. These are all the instances in which the word *moneys* occurs in the will, and in no one of them is there an ambiguous or unusual meaning attached to it; clearly showing that the testator used the term understandingly, and not in any doubtful sense. If so, it is utterly inconsistent with the sound and settled rules of interpretation, to give to this term a broader operation than its legal, or popular meaning requires.

It was urged, however, in argument, that the qualification superadded to the term moneys, namely, " *belonging to my estate,*" shows that the testator intended to use it in a more enlarged sense than its ordinary acceptation; and showing, also, a misdescription of the fund referred to. If the description was inapplicable to the subject, or thing bequeathed, there would be force in the argument, but that is not the fact. It is just as fit and proper to say the *moneys,* (meaning cash,) belonging to my estate, as to say the bonds and mortgages belonging to my estate. The description is equally applicable to both. The one belonged to his estate as much as the other. Indeed, if the description was false and inapplicable to the subject, the settled rule of construction requires a rejection of the description, when the thing devised, or bequeathed, is certain. (11 *Johns. Rep.* 218.) But there is no necessity of applying this rule. There is no misdescription; the moneys did belong to his estate; so that, although the description may be surplusage, it is true in point of fact. Is it not reasonable to presume that if the testator had intended, by this residuary bequest, any thing more than his cash, he would have used some more appropriate language? The whole will shows that he understood the force and meaning of terms; and if he had intended, when he made his will, to extend this bequest to his bonds, mortgages, notes, and *choses in action,* it is inconceivable why he did not adopt some expression indicating such intention, as, " the moneys due me," " my moneys at interest," or the like; such would have been the natural and obvious phraseology.

There is no force in the criticisms which have been made upon the word *moneys,* as being of more extensive signification than *money.* In the statute book, and in *common parlance,* they

IN ERROR.
......
ALBANY,
April, 1818.

MANN
v.
MANN.

are used indiscriminately, as conveying the same sense and meaning.

It was very much pressed on the argument, that unless the word moneys was extended beyond the cash fund, there would be a failure of the bequest. And, in order to give much force to this argument, it was assumed that the 1,000 dollars legacy to *Mary Cornell* was charged upon the fund, of which the testator gave his widow the rest, residue, and remainder. But I have shown that that is not the case. The legacy to *Mary Cornell* is expressly charged upon the personal estate generally. It is true, that where there is a specific legacy charged upon a fund of any way doubtful description, that construction will be most favoured which will prevent a total failure of the bequest. This is the leading principle which runs through the cases cited upon this point on the argument. But the principle does not apply here in its full force. There is no specific sum bequeathed to the widow by this clause in the will, and there is nothing from which it can be determined how much he intended to give her. Where there is a specific sum named, the extent of the testator's bounty is defined, and his will known, and it is the duty of courts to search for a construction that will carry it into effect. A general residuary clause is very often thrown into a will without much calculation as to its being very beneficial. It is certainly a pretty far-fetched inference, that this was to be the fund for the support and maintenance of the widow. I can discover nothing in the will intimating such an object, particularly by this clause, especially as such very ample provision had been made for her in the clauses immediately preceding. · There is no more reason to conclude that the moneys were intended for her support, than for the purpose of building houses upon the lots he had given her. If all his outstanding debts passed under this clause to his widow, then she would take all the personal estate ; for the specific legacies to her of his household furniture, farming stock, &c. swallowed up all the residue of his personal estate ; and the subsequent clause, giving to the children of his three brothers the rest, residue, and remainder of his *estates*, real and *personal*, would, so far as respected the personal estate, be nugatory. It is not reasonable to presume that if he had disposed of all his personal estate before, he would have again included it in this devise, and mentioned, so emphatically, as one of his *estates*. It is one of the settled

*IN ERROR.*
·······
ALBANY,
April, 1816.

MANN
v.
MANN.

rules in the construction of wills, so to interpret each part as to give effect to the whole, when it can be done, which would not be the case if the widow is to take all the outstanding debts. The residuary bequest of his personal estate would be senseless, having nothing to operate upon, and the testator knowing it to have been previously disposed of.

Construing the will, therefore, by itself, I can see no ground for extending the term " *moneys*" to all the *debts* due to the testator ; and it must have this extent, if at all reaching a *chose in action.* The term is, if possible, less applicable to a bond than to an account, especially if it was for money lent. And, indeed, if we go beyond the legal or popular signification of *moneys*, it must be extended to all claims sounding in *contract.*

I shall very briefly notice the question as to the admissibility of the parol evidence. This is, in a great measure, involved in the consideration of the other question. There is, certainly, no resulting trust to be rebutted, so as to let in parol evidence on this ground ; and I have endeavoured to show that there is no *latent ambiguity* calling for explanation by extrinsic evidence. The testator has used plain, intelligible, and appropriate terms. By applying the provisions in his will to the situation of his property at the time of his death, there is nothing from which it can be inferred that there is a misdescription of the fund referred to in this clause in the will. Every provision in it is satisfied by giving to the words their usual and ordinary signification. To admit the parol evidence offered of the *declarations* of the testator, would be a direct infringement of what has been, for centuries, considered a settled rule, that no parol evidence can be received to supply, vary, contradict, or enlarge the words in a will, except in the cases mentioned, of which the present is not one. I agree with Lord *Ellenborough*, that it would be going farther than any case I am aware of, and a dangerous precedent to admit evidence of intent, from extraneous circumstances, to extend plain and unequivocal words in a will.

The inquiry into the situation of the testator's property (admitting we were authorized to notice it) would not, in any manner, explain his intention with respect to his *choses in action.* Such intention would still be left to be collected from the will itself. To receive the verbal declarations of the testator to contradict or enlarge the plain and obvious import of his written language, would not only be repugnant to the most sound

and salutary rules of law, and an alarming precedent, but would infringe upon the spirit and policy of the statute, which declares, that no will in writing concerning any personal estate shall be repealed, or any part thereof revoked or altered by any words, or will, by word of mouth only. (1 *N. R. L.* 367.) I am, accordingly, of opinion, that the decree ought to be affirmed.

*IN ERROR.*
......
*ALBANY,*
April, 1816.

This being the opinion of a majority of the court,* it was thereupon ORDERED, ADJUDGED, and DECREED, that the decree of the court of chancery, in this cause, be affirmed, and that the appellants pay to the respondents their costs to be taxed, and that the record be remitted, &c.

* *Six of the Senators only dissenting.*

