### JANEWAY's Executor *v.* GREEN and others.

A testator having two bond debts payable on demand with interest, against F. the husband of his granddaughter G., gave one-ninth part of the bulk of his estate to trustees, in trust, first to pay to his executors out of the same, *but not out of the annual income or proceeds,* all such sums of money as might be owing to him at his decease, by F., and secondly to pay to G. for her life, the net annual income and product of the residue of the trust property or estate, for her separate use. The ninth of the personal estate was not enough to pay half the principal of F.'s bonds. The trustees omitted for several years, to pay off F.'s debt, and used the testator's personal effects to improve his real estate and make it productive. They then claimed that interest should be paid on the debt out of G.'s income from the ninth part.

*Held,* that no interest was payable on the debt of F. after the death of the testator, either out of the net income or the capital of the ninth part.

Also that interest was to be computed on the bonds until his death, and paid to the executors.

F.'s debt is to be regarded as one due from a stranger, and it is simply a charge or burthen of a sum in gross, imposed upon the capital of the trust fund, and upon such a charge, an obligation to pay interest cannot be implied except upon the plain intention of the person by whom it is granted.

There is no equity in the case which requires G. to pay out of the income such sum as it has been benefitted by the trustees omission to pay the debt of F. *Non constat,* but that the whole estate has been benefitted in a corresponding degree by such omission.

Where an order of the court, made in the city of New York, refers to the *amount of the annual rent* received at its date b   one entitled to the net income of real estate ; the direction is to be deemed as intending the rent for the year ending on the first day of May.

February 7 ; March 14, 1845.

THE bill in this cause was filed on the 26th of December, 1839, by Jacob J. Janeway, as surviving acting executor and trustee of George Janeway, formerly of the city of New York, who died on the second day of September, 1826, seised of a large real estate of inheritance in that city, and possessed of considerable personal property ; for directions in respect of the share of the estate given to Sarah Ann Green, then Sarah Ann Freeman, and for the settlement of the executors accounts in respect of the same.

The paragraph in the will upon which the questions arose in this suit, was in these words :

" Thirdly. And touching the one other full and equal third part of the rest, residue, and remainder of all and singular my said real and personal estate, I give, devise, and bequeath one-third part thereof, the whole into three equal parts to be divided, unto the said Ann Janeway, Jacob J. Janeway and Peter Sharpe, and their heirs, executors and administrators, respectively as joint tenants, and not as tenants in common, upon the following special trust and confidence, that is to say, that they my said trustees shall and will from and immediately after my decease, stand seised and possessed thereof, upon the following uses, trusts, intents and purposes. First, to pay to my said executors out of the said trust estate or property so bequeathed and devised

to them, (but not out of the annual income or product thereof,) all such sums of money as may be owing to me at my decease by Augustus Freeman, the husband of my granddaughter Sarah Ann Freeman, daughter of my deceased son William Janeway. Secondly, to pay over to my said granddaughter for and during her natural life, in regular payments, the net annual income and product of the residue of the said trust property or estate, to and for her sole and separate use free from and independent of her said husband, his control, debts, and engagements, except his debts which may be owing to me at my decease as aforesaid. And I will that her separate and individual receipts to my said trustees shall, notwithstanding her coverture, be full and valid discharges for all payments directed to be made to her by them, and from and immediately after the death of my said granddaughter, upon trust to distribute and divide the residue of the said trust estate and property, to and among the children of my said granddaughter now born, or hereafter to be born, share and share alike, as tenants in common; and if any of the said children shall then be dead, leaving lawful issue living at the death of my said granddaughter, then to distribute and divide the same to and among the children of my said granddaughter then living, and the issue of such of them as may then be dead, such issue taking only the share or portion which would have fallen or belonged to his, her, or their parent or parents."

The residue of the devises and bequests of the third part of the estate, were for the benefit of Mrs. Freeman's brothers, George and William Janeway.

At the death of the testator, Augustus T. Freeman, named in the will, was indebted to him in two bonds, both executed by William M. Ross and Freeman, and payable on demand with interest, one for $2000, dated March 1, 1824, and the other for $4400, dated September 24, 1825.

Freeman died after the testator, and his widow in December, 1832, married Joseph Green. The executors and trustees paid the entire net income of the ninth part of the estate, to Mrs. Freeman until June 2, 1833, supposing till then, that they could not retain out of it the interest on the Freeman debt. At that date the interest on the debt from the death of the testator

amounted to $2662 66; and after that time they retained the accruing interest at six per cent. out of her annual income. They had previously paid to her for income, the aggregate sum of $12,229 08. From June 2, 1833, to May 10, 1838, they paid her annually, about $1590; and from the latter date about $2260.

The real estate of the testator had been partitioned; and the complainant asked the direction of the court as to the manner in which he should raise and pay the Freeman debt, and as to his retaining out of Mrs. Green's income, the interest accrued prior to June 2, 1833.

It appeared that on the 18th of October, 1830, on the petition of the trustees an order was made by this court, authorizing them to apply the testator's personal estate to the erection of buildings on his vacant lots; and the same having been so laid out, the court on their presenting another petition, made an order on the 19th of October, 1831, authorizing them to raise not exceeding $50,000, by mortgage of the real estate, to be expended in the same manner. Nearly $47,000 was raised and applied accordingly.

The order also created a sinking fund to be provided from the income of the property when improved, by appropriating such balance as would remain of the annual rents of the estate, after paying to each person interested therein such amount of the annual rent as such person at that time received.

Mrs. Green in her answer, insisted that no part of her income ought to be applied to the payment of the interest on the Freeman debt, and that the trustee ought to refund to her what he had retained on that account since June, 1833.

Issue being joined in the cause, it was on the fourth of September, 1840, by the consent of the parties referred to one of the masters of the court, to take and state the accounts between them.

The master's report was filed on the 27th of October, 1843. He allowed against Mrs. Green, the deduction made by the trustees from the income of the ninth part of the estate after June 2, 1833, in respect of the accruing interest on the Freeman debt; but refused to charge her with the interest thereon prior to that date in respect of the net income which had been paid to her by

the trustees while they supposed they had no right to deduct the interest.

To this part of the report the complainant excepted ; while Mrs. Green took an exception to the master's allowance of the charges made against her by the trustee for interest on the debt after June 2, 1843 ; and by another exception she insisted that no interest was chargeable on that debt, either against the one-ninth of the estate, or against the income of the same.

It appeared that the trustees on the first day of October, 1839, appropriated out of Mrs. Green's income $500 towards the sinking fund of the building debt, on the ground of its being a surplus beyond the amount of the annual rent which she was receiving at the date of the order made in October, 1831. This was done on the assumption that the annual rent intended by the order, was that of the fiscal year of the estate, which commenced on the first day of September in each year ; and on that footing there was a surplus as charged. But assuming that the calendar year, or the letting year from May to May, was intended by the order, Mrs. Green's income up to 1839, had not exceeded the amount of the annual rent she was receiving in October, 1831. The master disallowed the charge of $500, and the complainant took an exception to his decision.

The trustees in their account had charged to Mrs. Green $1763 16, the expenses of certain improvements and erections on premises in Chatham-street which in the partition were allotted to this ninth part of the estate. The master decided that only $721 of this sum was properly chargeable upon her life estate in the property, and that the residue must be borne by those entitled to the ninth part in remainder, to which she excepted.

The cause was heard on the pleadings, the master's report, and the exceptions taken.

*G. G. Waters* and *W. S. Johnson,* for the complainant.

*W. Lowerre* and *E. Sandford,* for Mrs. Green.

THE ASSISTANT VICE-CHANCELLOR.—The complainant's first, and Mrs. Green's first and second exceptions, relate to the

interest upon what is called the *Freeman debt*. The one party claims that the interest on that debt at the legal rate, shall be borne by Mrs. Green in respect of her enhanced income by reason of its not being taken out of the capital; while the other party insists that no interest whatever is to be paid on the debt, either from her income, or out of the capital of the ninth part of the estate.

I have considered the question with great care and attention, and the result is a clear and strong conviction that no interest is to be paid on the debt of Freeman. ·

I will advert briefly to the circumstances.

At the date of the will the testator held two bonds executed to him by William M. Ross and Augustus T. Freeman, one dated March 1, 1824, for $2000 with interest, and the other for $4400 with interest dated September 24, 1825. Both bonds, were in effect payable on demand.

It appears that Freeman had been in business, and the money represented by the bonds was sunk, and he had become insolvent. The circumstance of the testator's taking bonds, payable as these were drawn, indicates that he had little or no expectation of their ever being paid by the obligors.

Freeman was then the husband of Mrs. Green. As the granddaughter of the testator, she had an acknowledged claim upon his bounty for one-ninth part of his estate. He made his will on the 12th of April, 1826, and gave one-ninth part of the residue, or chief part of his estate, both real and personal, to trustees, upon trust, *first* to pay to his executors out of the same, *but not out of the annual income or proceeds thereof*, all such sums of money as might be owing to him at his decease by Freeman ; and secondly, to pay to his granddaughter for her life, the net annual income and product of the residue of the trust property, for her separate use.

The ninth part of the personal estate which enured to this trust, was not enough to pay half of the principal of the bonds ; and it was conceded that the real estate of the testator yielded only about four per cent. on its valuation.

The subsequent management, and the course pursued by the trustees, is not important to the inquiry. The solution of the

question is to be derived from the will and the state of things existing at the testator's death in September, 1826. And the question is, did the testator intend that any interest should be charged on Freeman's debt after his death, against this ninth part of his estate; and if so, did he mean that Mrs. Green's income should under any circumstances bear a portion of such interest?

It will be observed that this charge is not a debt due from the devisee or legatee. Freeman owed the debt jointly with Ross. He had no bequest whatever from the testator. So far as the ninth part of the estate is concerned, the question must be regarded precisely as if it were the debt of Ross alone, or of any other stranger to the blood of the testator, which he had thought proper to have deducted from such ninth part.

It is simply *a charge* or *burthen* imposed upon the capital of that ninth part, for the reason that the testator had been induced to make the loans to Freeman by reason of his family connection.

Now what does the will direct as to the payment of this charge?

Not that it shall be paid generally, out of the ninth part and its products. The income is expressly exempted from contributing to its liquidation.

Nor is there any direction to pay to the executors interest upon the debt.

It is evident from the careful exclusion as to the income, that the testator anticipated some delay in paying the Freeman debt. Yet the will is silent as to the payment of any interest. The charge is plain and explicit, to pay *the sums of money* which Freeman owed to him at his death. Not the sums of money which Freeman owed him, *with interest thereon*, or with interest until paid.

The direction is equally explicit that no part of those sums, shall be paid out of the annual income or product of the trust estate.

The scope of the will and the testator's views, I think may be thus summed up. He set apart one-ninth of his residuary property for the benefit of his granddaughter and her issue. As her

husband had failed, and the trust estate would be her only means of support, and would moreover produce a moderate rate of income ; the testator devoted to her use the whole of such income, without any charge or abatement, during her life.  At the same time, he required the trust estate ultimately to repay the sum due to him from Freeman ; and he left it to the trustees in the exercise of their discretion, to appropriate the necessary amount out of the capital of that estate, whenever in their judgment in reference to the interests of all concerned, it was proper to make the application.  A delay might enhance Mrs. Green's income for a time, and might still be for the benefit of the testator's estate at large.

It surely could not have been his intention to authorize the trustees to delay a payment of the debt in the manner here claimed.  If it carried interest at all, it bore interest at seven per cent.  Suppose the net income of the whole trust estate, or ninth of the residue, were four per cent.  It is manifest that every year's delay would be a positive injury to Mrs. Green to the extent of three per cent. on the debt, if the interest should ultimately come out of her income.

The will does not provide that in case of a delay, Mrs. Green's income shall contribute to the interest of the debt.  As I have stated, the testator contemplated a delay, and at the same time, interdicted any interference with the income of the trust property.

In order to make the debt bear interest as against this trust estate, it is necessary to insert in the will the words "*with interest thereon.*"  This cannot be done by construction, when there is nothing in the will which declares such an intent. (See *Mann* v. *Mann's Executors,* 1 J. C. R. 231 ; S. C. 14 Johns. 1.)

At the death of the testator, there was due on these bonds, the sum of $6827 46.  Suppose the devise and bequest of the ninth part had read thus : " In trust, first, to pay to my executors out of the said trust estate, (but not out of the income thereof,) the sum of $6827 46."  Would that have imposed a charge for interest, either upon the income or capital ?  Clearly not.  It would have been a mere charge on the capital, to be paid in

gross, by a sale or other application of the capital. The executors could have compelled and hastened such payment; but the executors could not collect interest, and neither they or the trustees could retain or reclaim from the tenant for life, the income of any part of the capital which accrued prior to such application.

The language used in this will, "sums of money owing at my decease," with the language of the two bonds; is the same in effect as if the expression had been "the sum of $6827 46."

Keeping in view that this is not a *debt* of Mrs. Green's, or of the remaindermen in the trust estate, but a simple charge of a sum in gross upon the capital of a fund, and payable out of the capital alone, and whether sooner or later, exclusive of the income of the fund; and there is no difficulty in the question. Even upon a debt, interest is never charged for mere delay of payment. It is charged upon a contract to pay it; by statute; and by way of damages upon a breach of trust. A contract to pay interest is sometimes implied, but there is no such implication upon a mere charge, unless upon the plain intention of the person granting the charge.

There are some authorities which by analogy, fully sustain the construction which I have maintained.

In *Hawley* v. *Cutts*, Freem. Ch. R. 24, A. owed B. £300 on a bond. By his will B. made a bequest in these words, "I give A. £300 in money which he oweth me upon bond." At B.'s death, there was £20 due for interest besides the principal of the bond. It was held that the interest did not pass by the bequest.

In *Roberts* v. *Kuffin*, 2 Atk. 112, (more fully reported by the name of *Roberts* v. *Kyffin*, in Barnard. Ch. R. 259,) the testator gave to his son the following bequest, "I give to T. R. £300 which I have at interest secured by a mortgage on the estate of Marriot, and I also give him all the messuages, lands and tenements secured for the payment of that money, till the same be paid and discharged." Lord Hardwicke held that the son was entitled to the principal only, and not to the interest on the mortgage. He said it was very clear on the first clause of the will, standing by itself. And he put by way of illustration, the case of a bequest of £300 upon a bond; concurring with the decision in *Hawley* v. *Cutts*.

Janeway v. Green.

In *Smallman* v. *Goolden*, 1 Cox's Ch. R. 329, the testator gave to his son "all sum and sums of money due to me from him, on bond or bonds or any other security." The son was indebted on bond at the date of the will, and subsequently became indebted to the testator on a bond for £100. Lord Kenyon, then Master of the Rolls, decided that the latter bond was not included in the bequest.

In *Hamilton* v. *Lloyd*, 2 Ves. jr. 416, the testatrix had a mortgage upon an estate of which her brother was tenant for life, and had his bond for £120 arrears of interest on the mortgage. In her will she disposed thus; " I give to my brother Lloyd *the arrears* of my mortgage upon his estate," &c. It was contended that this was a gift of the mortgage itself. But Lord Loughborough deemed it too plain to raise a doubt upon, and limited it to the bond for the arrears.

In *Jones* v. *Lord Sefton*, 4 Vesey, 166, the testator gave his personal estate to his wife, and to his son he gave all arrears of rent due to him at his death. When he died he had a bond given to him for arrears of rent several years previous to that time. Lord Loughborough decided that the bond was bequeathed to the widow, and not to the son.

I was referred on the other side to *Clarke* v. *Sewall*, 3 Atk. 99. What is there said by the Chancellor, relates to interest on the legacy, not on the debt; as may be seen in Ward on Legacies, 299.

In *Gittins* v. *Steele*, also cited from 1 Swanst. 199, legatees who had received a particular legacy, were required to refund in part, on the construction of the will; and on the question whether they should pay interest, the Chancellor said he would not ordinarily charge interest, but as the same legatees were entitled to another fund which was making interest, he charged them interest at four per cent. on the amount overpaid.

Upon these authorities, it is impossible to hold that the words "sums of money due to me," mean in a will, sums of money due to me with interest thereon.

Unless we add those words to the will, there is no authority to the trustees to take interest on the Freeman debt, out of the capi-

tal of the trust estate. And the will is express against taking it out of the income.

It may be said that equity requires Mrs. Green to pay out of the income, at least such sum as the income has been benefitted by the trustee's omission to pay the debt of Freeman whereby the capital and income would have been proportionably reduced. But no such equity is apparent. The testator intended she should have the full income, until the trustees should sell and pay the charge. They have thought proper not to sell, and I am not to presume that they acted unwisely. *Non constat*, but that the whole estate has been enhanced in value for the remaindermen, more by the turning in the personalty for its improvement and the keeping of it in mass, than it would have been by the payment of the Freeman debt through a sale of a portion of the real estate.

I think there is no ground for withholding from Mrs. Green any part of the income, and therefore must overrule the complainant's exception, and allow the second exception of the defendant.

Her first exception is also allowed, except so far as it may embrace interest which had accrued on the bonds at the death of the testator. The language of the will so frequently cited, and the subsequent words applied to the same subject, viz. " his debts which may be owing to me at my decease as aforesaid ;" are sufficient to embrace all dues at that time, whether for principal or interest, and on bond, note or simple contract.

The complainant's *second exception* relates to the master's disallowance of a charge of $500 which the trustee had taken from Mrs. Green's income, and carried to the sinking fund for the discharge of a debt of near $50,000 which was incurred for the improvement of the real estate of the testator in pursuance of an order of this court made in October, 1831.

By this order they were permitted to apply to that fund, such balance as would remain of the *annual rents* of the estate, after paying to each person interested in the estate, *such amount of the annual rent, as such person at that time received.*

The *annual rent* in this direction must be deemed the rent from the first of May in each year, that being the letting year in

this estate, as well as the letting year recognized in the city of New York by our statutes.

With either the letting year, or the calendar year, as the basis, there never has been any balance, after paying to Mrs. Green the amount of annual rent which she received at the time the order was made. The master's decision was unquestionably right, and the exception must be overruled.

The defendant's third exception is founded upon the master's charge to her of $721, it being a part of the expense of certain permanent improvements and erections made by the trustee upon the ninth part of the estate as allotted in the partition, from which her income was derived.

The master's statement of the facts, in connection with the schedule marked I. attached to his report, abundantly sustain his allowance of the charge, and the exception must be disallowed.

The master's report is confirmed in every particular, save the interest on the Freeman debt. If the parties can agree upon the balance after deducting the sums withheld for that cause, a decree may be entered at once, disposing of the whole matter. Otherwise the cause must be sent back to the master.(a)

---

(a) The parties subsequently agreed upon the corrections to the master's report, and a decree was entered accordingly.