CASE 8—PETITION EQUITY—JUNE 14.

# Williams' administrator vs. McClanahan, &c.

APPEAL FROM BOURBON CIRCUIT COURT.

A widow receiving a slave as dower from the estate of her husband, cannot be permitted to hold him or his price in satisfaction of any claim she might set up for money against the estate.

A trust results favorable to those from whom the consideration and estate moves, and is certainly much less liable to exception, when the consideration given is accompanied with the declaration that the purchase is intended for those whose funds form the basis of the purchase. (1 *Marshall*, 46.)

It is a well settled principle in equity that whenever the property of a party has been wrongfully converted into another species of property, if its identity can be traced, it will be held in its new form liable to the rights of the original owner. (2 *Story's Eq.*, sec. 1258, &c.)

A dowress who sells a dower slave to a southern trader, and the slave is removed out of the State without the consent of the owner of the reversion, forfeits her life estate in such slave. In such case, where the purchase money is laid out by the dowress in the purchase of other slaves, the owner of the reversion may elect to take such slaves instead of the price for which the dower slave was sold.

Adverse possession during the continuance of the life estate forms no bar to the right of those in remainder. The statute of limitations never attaches until the cause of action arises. (1 *Dana*, 235; 8 *B. Mon.*, 539.) Here a dower slave was sold by the dowress, and removed from the State, and the price laid out by her in other slaves. The court held that the cause of action of the reversioner, for the recovery of the slaves so purchased, accrued upon the death of the dowress, the forfeiture of the life estate having been waived.

HUNT & BECK, for appellants, cited 2 *Story's Equity, section* 1195; *Ib.*, 1199, 1202, 1195; 2 *Paige*, 217; 1 *Bibb*, 611; 4 *Ire-*

dell's Eq. Rep., 94; Story's Eq., sec. 1228; 2 Ib., sec. 1201, note b; 1 Stat. Law, 739.

R. Hawes, on same side, cited 1 Bibb, 609; 3 Ib., 15; 4 Kent's Com., 305; 6 Dana, 331; 2 Paige, 217; Story's Equity.

Williams & Prall, for Massie, one of the appellees, cited 1 Marsh., 46, 47; 1 White & Tudor's Leading Cases in Equity, 86; Meigs' Digest, vol. 1, 228; 6 Humphreys, 55, 57; Roberts on Frauds, 99; 3 Bibb, 15; 1 John. Chy. Rep., 582; Hill on Trustees, 94; 3 Mon., 538; 8 B. Mon., 541; 3 J. J. Mar., 87; 5 B. Mon., 31.

John T. Croxton, for Mrs. McClanahan, cited 1 White & Tudor's Leading Cases in Equity, 86; 1 Marsh., 46; 12 B. Mon., 663; 14 Illinois, 505; 10 Hare, 209; Hill on Trustees, 142, 143, n; 5 Dana, 446; Story's Equity, 1258; Ib., 1262, 1263; Davies, 154; 15 Penn., 428; 7 Dana, 273; 8 B. Mon., 541; 1 Metcalfe, 104–5; 1 J. J. Mar., 404; Hill on Trustees, 392; 7 Dana, 165; 1 Met., 597.

JUDGE PETERS DELIVERED THE OPINION OF THE COURT:

Robert Holloway died intestate in the county of Bourbon in the year 1829, leaving his widow, Benedicta, and a daughter, his only child and heir at law, him surviving.

Shortly after his death, administration upon his estate was granted to his widow and to William Wright. Holloway, at the time of his death, was the owner of considerable personal estate and several slaves. In 1830 the widow intermarried with Samuel Williams, and at the November term, 1830, of the Bourbon county court her husband was appointed guardian for Mary Holloway, her infant daughter.

In January, 1830, and before the marriage of the widow with Samuel Williams, dower was assigned to her in the slaves left by her intestate, by commissioners appointed by the Bourbon county court for the purpose, and, of the slaves so assigned to her for her dower, a boy aged about 17 years, named Peter, was one.

The widow then took possession of Peter, by virtue of said assignment to her, as a part of her dower in the slaves of her late husband, and held him in that character until 1831, and

until after her marriage with Samuel Williams, when he was sold for $400. Shortly after the sale of Peter, two slaves, Polly and her female child Nora, were purchased at the price of four hundred and twenty dollars, and the four hundred dollars received for Peter were invested in Polly and Nora.

Some years after the purchase of Polly and Nora, and after Polly had given birth to several children, Mrs. Williams sold her and her youngest child to a Mr. James Boggs for $420, retaining Nora and the other children of Polly.

Mrs. Benedicta Williams survived her second husband, who, by his will, gave to her all the property that came by her, and the use of the farm on which he resided at the time of his death "during her life or widowhood."

By her second marriage Mrs. Williams had several children and died intestate in Bourbon county in 1858. After her death the appellee, H. McClanahan, who married Mary Holloway, and his wife, having taken Nora and her children and the other children of Polly held by Mrs. Williams at her death into their possession, and having sold a part of said slaves, this suit was brought by Abram Spears, as administrator of Mrs. Williams, against McClanahan and wife and their vendees, to recover said slaves for the purpose of being applied to the payment of her debts, and for distribution.

After the sale of Peter, Mrs. Williams did, as is proved, upon some occasions set up some claim to the money arising therefrom, on account, as she alleged, of not having received as much of the personal estate of her former husband as she was entitled to; but this claim is not sustained by any proof whatever, and the facts connected with the transaction repel the conclusion that she had any just claim against the estate; she joined in the administration and had the right to retain her part of the personalty; but if Wright, the other representative, received all the assets and transacted all the business, he settled his accounts and paid to her husband all that was due him as guardian of her daughter, and, it cannot be supposed that he would have collected what was due his ward and neglected his wife's interests. But, be that as it may, having received Peter as one of the dower slaves from the estate of her de-

ceased husband, she cannot be permitted to hold him, or his price, in satisfaction of any claim she might set up for money against the estate of her deceased husband.

The money received for the dower slave, Peter, was paid for Polly and Nora, and, with the addition of twenty dollars, made up the entire price paid for them. This purchase, as was repeatedly declared by Mrs. Williams, was made for the benefit of her daughter Mary, who was entitled to the reversionary interest in Peter after her death. And this court held in *Benjamin Perry et al. vs. Milly Head et al., administrators*, (1 *A. K. Mar.*, 46,) the rule to be settled, "that a trust results favorable to those from whom the consideration and estate moves; and is certainly much less liable to exception, when the consideration given is accompanied with the declaration, that the purchase is intended for those whose funds form the basis of the purchase." And it is now regarded as *a well settled* principle in equity, "that whenever the property of a party has been wrongfully converted into another species of property, if its identity can be traced, it will be held in its new form liable to the rights of the original owner." (2 *Story's Equity*, *section* 1258, *&c.*)

The sale of Peter could only have been made by Mrs. Williams, with the consent and by the permission of her husband, and if he was sold to a southern trader and removed from the State, which appears from the evidence to have been done, such removal was without the consent of the owner of the reversion, because she was an infant and could not consent. The estate held by Williams and wife in right of her dower was by that wrongful act forfeited, and it was his duty, as the guardian of the reversioner, to have taken the estate and held it for her benefit; but his own interests conflicted with his duty to his ward, and he permitted the price of Peter to be converted into other slaves, and it is equitable that she should be permitted to elect to take these remaining slaves instead of the price of Peter, especially in a case like this, where no hardship is imposed—for the $420 received by Mrs. Williams for Polly and her youngest child, and which she appropriated to her own use, was a liberal remuneration for any outlay of

money, or trouble upon her part, in making the sale of Peter and the purchase of Polly and Nora.

Mrs. McClanahan's right accrued upon the death of her mother, (as the forfeiture, if it occurred, was waived,) and the time which elapsed during the continuance of the life estate, or even an adverse possession during that period, could form no bar to the right of those in remainder. The statute of limitations never attaches until the cause of action arises. (*Betty vs. Moore*, 1 *Dana*, 235; *Tom Davis vs. Tingle et al.*, 8 *B. Mon.*, 539.)

Wherefore the judgment is *affirmed*.