## PICKERING *v.* PICKERING & A.

In the case of an ambiguity apparent on the face of the devise, parol evidence of the intention of the testator is not admissible to explain or remove it. When the ambiguity is latent, and arises from extrinsic evidence showing that there are two subjects or persons to which the words of a will may apply, then further extrinsic evidence may be received, to show which subject or person was intended.

Where the devise was of five acres of land in the north-west corner of the testator's farther field, to be laid out as nearly square as may be convenient, no portion of the highway adjoining the land is to be included in the measurement.

The rules stated by which the land devised is to be located.

IN EQUITY. This bill is brought to determine the location and boundaries of a tract of land consisting of five acres, devised by James C. Pickering to the plaintiff, Abby Pickering, and to restrain the

defendants from the destruction of the ancient landmarks and the confusion of lines and boundaries.

The devise to the plaintiff was of five acres of land in the north-west corner of the testator's farther field, to be laid out as nearly square as may be convenient, and opposite to five acres on the west side of the road, devised to Susan Pickering. The lot claimed by the plaintiff was nearly an oblong square; and she introduced parol evidence tending to prove that about the time of making the will the testator measured off a tract of land in the corner described, and set up some stakes, and declared it to be for the plaintiff; but it contained only about four acres.

The evidence of the defendants conflicted very seriously with that of the plaintiff as to the purpose of this staking out.

The cause was heard upon bill, answer, and proofs; and the rest of the facts sufficiently appear in the opinion of the court.

*W. H. Y. Hackett*, for plaintiff.

*A. R. Hatch*, for defendants.

BELLOWS, C. J.  The first question is, whether the parol evidence offered is admissible to affect the construction of the devise.

The devise to the plaintiff appears to be of five acres of land in the north-west corner of the testator's farther field, to be laid out as nearly square as may be convenient, and opposite to five acres on the west side of the road, devised to Susan Pickering.

If there is any ambiguity here it is not latent, but is apparent on the face of the devise; and parol evidence of the intention of the testator is not admissible.

When there is difficulty in applying the words of a will to the person or subject, and that difficulty does not arise upon the face of the will itself but is caused by the introduction of extrinsic evidence, then resort may be had to further extrinsic evidence to remove the difficulty, by showing what person or subject was really intended. As, if it appear by evidence *dehors* the will that there are two or more persons or subjects that would come within the words of the will, parol evidence may be received to show which was intended. But if the ambiguity is apparent on the face of the will, the court must give it a construction, if it can be done. If it cannot be interpreted, then the devise must in general fail, and cannot be aided by extrinsic evidence. *Miller* v. *Travers*, 8 Bing. 244, where a good definition of a latent ambiguity is given, and which is approved in *Atkinson's Lessee* v. *Cummins*, 9 How. U. S. 479; *Doe* v. *Oxenden*, 3 Taunt. 147; *Mann* v. *Mann*, 1 Johns. Ch. 231, where it is held to be well settled that parol evidence cannot be admitted to supply or contradict, enlarge or vary, the words of a will, nor to explain the intention of the testator except in two specified cases,—where there is a latent ambiguity arising *dehors* the will as to the person or subject meant to be described, and to rebut a resulting trust; and this is affirmed in the same case, in 14 Johns. 1, and it is the settled doctrine in New York. So is *Comstock* v. *Van Deusen*, 5 Pick. 166; *Brown* v.

*Saltonstall,* 3 Met. 423 ; *Pingry* v. *Watkins,* 17 Vt. 379.   So are the elementary authorities, 3 Stark. Ev. 1000 ; Wigram on Wills, propositions 2 and 3 ; 1 Jar. on Wills, 343, 358, and 371 ; 1 Phillipps' Ev. 531 and 538 ; Cowen & Hill's notes to Phillipps' Ev., 3 vol., notes 938, 939, and 948 ; Redfield on Wills, 502–3, and cases cited in note ; 1 Greenl. on Ev., secs. 289, 290, and notes ; 1 Story's Eq. Jur., § 181. · So are our own cases,— *Webster* v. *Atkinson,* 4 N. H. 23, and cases cited ; *Bartlett* v. *Nottingham,* 8 N. H. 302 ; *Greenleaf* v. *Kilton,* 11 N. H. 530 ; *Brown* v. *Brown,* 43 N. H. 25.

In the case before us, whatever ambiguity there is arises from the words of the will, and not from extrinsic evidence; and therefore such evidence is not admissible.   The evidence offered on the part of the plaintiff tended to show that the testator intended that the plaintiff's five acres should be laid out in an oblong square, or nearly so ; and the evidence was of both acts and declarations, supposed to be near the time of making his will.

· Had he marked out the five acres and set up monuments at the corners, and the land devised to the plaintiff had been described by such monuments, then parol evidence would have been admissible to identify them; but the proof offered is not that the five acres were marked out, but only about four acres, and there is no reference whatever in the will to any such boundaries.   Under those circumstances we can regard the evidence only in the light of a declaration of the testator's intention as to the form in which the five acres should be laid out; and such evidence, as we have seen, is not admissible.

Nor do we think there was any such occupation of the five acres by the plaintiff, since the death of the testator, which occurred in March, 1862, as to affect the question,—the will, as it seems, having been finally proved in the autumn of 1867.

The question then is, How shall the five acres of the plaintiff be laid out ?   It must be in the north-west corner of the field described, and it must be, as nearly as may be convenient, in a square form.   If the line of the Emery land formed an exact right angle with the line of the highway, ordinarily the land should be laid out in an exact square, all the sides being equal ; but the course of the Emery line in that corner is not all the way at right angles with the highway, so that the five acres could not be laid out in an exact square, and hence probably the qualifying term in the devise; or at least this change in the course of the Emery line was probably one cause of this qualification.

If, as is alleged, the land at this corner is level and smooth, it would ordinarily be most convenient that the southerly line of the five acre lot should be at right angles with the general course of the highway at this point, and should start at such point on the highway that, by extending it back a distance equal to the average distance from the Emery line, it would include the five acres, the purpose being to make the average dimensions of the lot each way the same; so the easterly line should be parallel with the general course of the road against that lot.

These are the general views that should govern the location of this five acre lot, assuming that it is level and may be so conveniently

divided. There might be a state of things that would justify some modification of these views, but none are now perceived or suggested.

In the case of *Annan* v. *Baker*, 49 N. H. 161, where the conveyance was of seven and three fourths acres of B.'s homestead farm, bounded west by a highway, north by the farm of C., and easterly and southerly by the remaining part of the land of B., it was held that the land should be located in the north-west corner of this farm, the easterly and southerly lines drawn equidistant from the corner made by the highway and the farm of C., and far enough to embrace the required quantity of land.

In *Walsh* v. *Ringer*, 2 Ham. Ohio 327, the description was of seventy acres of land, in the south-west corner of a certain tract; and the court, as in *Annan* v. *Baker*, held that the land must be laid out in a square form, by lines drawn at equal distances from the corner to make the north and east sides, and to include the requisite quantity. It was also held that parol evidence of an intention to locate the land differently was not admissible.

It is urged by the defendants' counsel that, in measuring out the five acres, one half of the highway should be included and reckoned; but we think otherwise. The devise is of five acres of land in the northwest corner of the testator's farther field ; and although the tract bounded by the road would ordinarily be deemed to extend to the centre of it, yet in this case only the land in the field should be measured, although the title would extend to the centre of the road.

In *Daniels* v. *Cheshire Railroad*, 20 N. H. 85, where there was a contract to pay for all the land on both sides of Cold river at $100 per acre, it was held that the terms indicated that only the land each side of the part over which the river flowed was to be measured and paid for, although the bed of the river passed by the grant.

And the intention to give five acres out of the field, independent of the highway, is quite as distinctly manifested in the case now before us as in *Daniels* v. *Cheshire Railroad*. Indeed, it is matter of common observation, that in conveyances of land bounded by highways, no part of the highway is actually included in the description, and we are inclined to think that it is rarely measured as part of the land conveyed. At all events, we think that the terms here used indicate that no part of the highway is to be included in the measurement of the five acres.

The case then of the plaintiff, as stated in her bill, is not sustained, and the suit must fail, unless a location according to the views suggested should be in conformity with the description in the bill, which, however, would seem to be out of the question.

*Bill dismissed.*