HENRY P. COTTON *vs.* CHARLES C. SMITHWICK.

Lincoln, 1875.—April 26, 1877.

*Will.*

While in the construction of a will, the general rule is, that the intention of the testator is to govern, it is the intention expressed by the will and not otherwise.

Declarations of a testator after the making of his will are admissible only in case of latent ambiguity, and then only from necessity, for the purpose of preventing the devise from being declared void for uncertainty.

If the terms of the devise can be applied to the subject matter with legal certainty, without the aid of the declarations of the testator, such evidence is not admissible.

To get at the intention expressed by the will, every clause and word are to be taken into consideration.

Where parties, acting upon an erroneous construction of a will, adopt a monument not intended by the testator without possession according to it of such a character, and for sufficient length of time to give title by adverse possession, they are not thereby estopped from showing the true monument.

Where the devise was of "a lot of land in Newcastle, known as the back field *west of the top of the hill*, it being the west end of my farm in Newcastle, adjoining Deer meadow brook; the eastern line of said lot to be a line run from the north line of my said farm, at right angles with said north line, striking over the *top of the hill so called;*" and there were two hills on the farm, the one claimed by the plaintiff being the more easterly, harmonizing with all the calls in the will, and the one claimed by the defendant, with a part only; *held*, that this was not a case of latent ambiguity, and that the hill claimed by the plaintiff was the monument intended, and that parol evidence of the declarations of the testator made after the execution of the will was properly excluded.

On exceptions and motion.

Trespass for breaking and entering the plaintiff's close and cutting and carrying away wood and timber.

The contention was one of boundaries. Both parties derive title under a devise in the will of the former owner, Henry Clark. The defendant's counsel, claiming that there was a latent ambiguity, as in the opinion stated, offered to show :

"The declarations of the testator two or three days after the making of the will, as to what disposition he had made of his homestead lot.

That immediately after the will was established, the two devisees went and located the boundary line between them on the top of the back field hill.

That they and their grantees under them, down to this plaintiff, cut and occupied up to this line on the one side and the other and never over it.

That by authority of Nathaniel Bryant, then owner of the plaintiff side, a surveyor was employed to run the line between the two lots, that Bryant said he would agree to whatever line they fixed, and that in the presence of B. F. Clark, Lishman Clark and Ephraim Clark, a line was then and there run by the surveyor over the top of the back field hill, and marked by spotted trees.

That Nathaniel Bryant dying without will, an administrator

and appraisers were appointed, and the latter went on to view this land as part of the estate, and that the boundary line was then and there pointed out by Nathaniel Bryant's heir and administrator, and that this land as pointed out to them, and as appraised by them, extended only to the top of the back field hill.

That soon after the plaintiff purchased, he went across his lot from north to south, with Edward H. Clark, on the back field hill, and pointing out this same line, declared it to be the boundary line between the two lots.

That when Nathaniel Bryant owned the plaintiff side, and Ephraim Clark the defendant, Bryant took a mortgage from Clark of the defendant lot, which described it as extending west 284 rods, which carries it precisely to the back field hill, and the line claimed by the defendant, contending that the acceptance of this deed would operate by estoppel."

The presiding justice excluded the testimony, and instructed the jury that if the line claimed by the plaintiff answered substantially to the calls in the will, that should be held to be the line so far as this case is concerned.

A further statement of the case appears in the opinion.

The verdict was for the plaintiff for $645.84; and the defendant alleged exceptions.

*O. D. Baker*, with whom was *J. Baker*, for the defendant.

The words "known as the back field," standing where they now do, and limiting and describing the "lot of land in said Newcastle," are insensible and repugnant.

I. Because the back field lies almost entirely outside the testator's farm, and if he, familiar as he was with the locality, had meant to apply the words "known," &c., to the land devised, he would have said, "known as part of the back field."

II. Because if it is the "lot of land" which was to be "known as the back field," that is not the "west end of the testator's farm," or any end, but a small piece in the middle.

III. It does not "adjoin Deer Meadow brook," but in its nearest point is more than one-half mile from it.

IV. Its eastern line cannot be "a line striking over the top of" either "hill," for it lies between the two, and does not touch either.

The words "known as the back field," then, being insensible and repugnant where they stand, must be rejected, unless they can be transposed so as to harmonize all the calls of the will. If they can, it will be the duty of the court so to do.

Applying the words "known as the back field," then, to the hill, instead of to the land, we should read "a lot of land in said Newcastle, and west of the top of the hill known as the back field" (hill,) thus simply transposing the two clauses. . . . . Thus by the simple transposition suggested, all the words of the will have effect and meaning, all its calls are answered, all inconsistency harmonized, and all ambiguity made clear..

The counsel also elaborated with citations the proposition, that parol evidence of the acts and the occupation of the parties, was admissible to explain the latent ambiguity of the plaintiff's deeds. And contended it was error to instruct the jury that "if the line claimed by the plaintiff answered substantially to the calls in the will, that should be held to be the line;" because if the line claimed by the defendant answered as substantially or more substantially to those calls, the plaintiff should not recover.

*A. P. Gould·& J. E. Moore,* for the plaintiff.

LIBBEY, J. The question involved in this case was the title to the land on which the alleged trespass was committed.

Both parties claim title to the *locus in quo,* under the will of Henry Clark, dated May 4, 1854, proved, approved and allowed, in probate, July 3, 1854.

At the time of making his will and at his decease, Henry Clark owned a large lot of land containing three hundred acres, situated in Newcastle, conveyed to him by his father, Ebenezer Clark, August 31, 1829. The evidence tended to show that he occupied the north half of the lot as his homestead farm, and that the south half was occupied by his brother, Ephraim Clark, for many years prior to his death, which occurred several years before the will was made, and that after the death of Ephraim, the south half was occupied by his son, Lishman Clark, till the decease of Henry.. The land in controversy is a part of the north half of said lot.

By the first item in his will, Henry Clark devised to his nephew,

Benjamin F. Clark, "a lot of land in said Newcastle, and known as the back field west of the top of the hill, it being the west end of my farm in Newcastle, adjoining Deer Meadow brook; the eastern line of said lot to be a line run from the north line of my said farm at right angles with said north line, striking over the top of the hill so called."

By the second item in his will, he devised "unto Lishman Clark, and Ephraim Clark, 2d, his brother, my nephews, to them and their heirs and assigns, all the remainder of my homestead farm in Newcastle, occupied by me, and also the farm occupied by the said Lishman Clark, intending to devise unto the said Lishman and Ephraim, all the land contained in the deed of my father, Ebenezer Clark, to me, except the parcel before devised to Benjamin F. Clark, my nephew."

The plaintiff claims, through mesne conveyances, the land devised to Benjamin F. Clark; and the defendant claims, through mesne conveyances, under Lishman Clark and Ephraim Clark, 2d. The title to the land in controversy depends upon the construction of the first clause in the will. The point in dispute between the parties, is the true location of the east line of the lot of land devised to Benjamin F. Clark.

For the purpose of showing the intention of the testator, and applying the calls of the will to the land, evidence was introduced giving a description of Henry Clark's homestead farm at the time he made his will, from which it appears that the following facts were not controverted. The eastern boundary of the farm was Damariscotta pond, and the western boundary was Deer Meadow brook. The whole length was about 505 rods. There was a hill on the farm about 100 rods west of Henry Clark's dwelling house, which is described as conical in form, sloping on all sides to the flat land. It is 146.58 feet higher than the low land or swamp to the west of, and adjoining it, and 134 feet higher than the sills of the house. A line drawn at right angles with the north line of the farm over the top of it, is 366 rods east of the west line of the farm. There was another hill or ridge of land 206 rods west of this hill, and 160 rods east of the west line of the farm, which at the north line was 64.44 feet higher than the swamp land afore-

said, extending across the farm, and descending gradually from the north to the south line. The descent between these two points is 31.32 feet. The sides of the hill descend gradually east and west for about 600 feet to the low land. The piece of land known as the back field was cleared before the conveyance from Ebenezer Clark to Henry Clark, and was used as a pasture after 1830. In 1854, it was mostly covered by a young growth of fir, pine and hemlock, so it was difficult to determine its original bounds. The remains of an old fence on one side were traceable. It contained from ten to fifteen acres; a part of it was on the north half, but the most of it was on the south half of the 300 acre lot. It is admitted that it lies wholly between the two hills; the west end being six to eight rods east of the top of the last named hill, and the east end about 150 rods west of the top of the first named hill. It is the only portion of Henry Clark's farm west of the first named hill which had been cleared, excepting a small piece of meadow on Deer Meadow brook.

The defendant introduced evidence tending to prove that the hill first described, before and at the time the will was made, was called "Oak hill," and that the other hill was called "Back Field hill." The plaintiff introduced evidence tending to prove that the first named hill was called" Harry Clark's hill," and "the hill;" and he claimed that by the true construction of the will, the east line of the lot of land devised by the first clause, is a line run at right angles with the north line of the farm striking over the top of this hill.

The defendant claims that the east line should be so located as to strike over the top of Back Field hill; that upon the introduction of the extrinsic evidence for the purpose of applying the calls of the will to the land, a latent ambiguity arises; that it is competent to introduce parol evidence to show the intention of the testator; and for that purpose offered evidence of the declaration of the testator, made after making the will, to the devisees. This evidence was excluded. Was it admissible? In construing a will, such evidence is admissible only in case of latent ambiguity, and then from necessity for the purpose of preventing the devise from being declared void for uncertainty. If the terms of the devise

can be applied to the person or subject matter intended, with legal certainty, without the aid of such evidence, then it is not admissible. Greenl. Ev., §§ 289 and 290. *Miller* v. *Travers*, 8 Bing. 244. *Hiscocks* v. *Hiscocks*, 5 M. & W., 363. *Brown* v. *Saltonstall*, 3 Met. 423. *Tucker* v. *Seaman's Aid Society*, 7 Met. 188. *Howard* v. *The American Peace Society*, 49 Maine, 288. *Madden* v. *Tucker*, 46 Maine, 367.

In discussing this question in *Miller* v. *Travers*, the learned Chief Justice Tindall declares the rule as follows: "It may be admitted, that in all cases in which a difficulty arises in applying the words of the will to the thing which is the subject matter of the devise, or to the person of the devisee, the difficulty or ambiguity which is introduced by the admission of extrinsic evidence, may be rebutted and removed by the production of further evidence, upon the same subject, calculated to explain what was the estate or subject matter really intended to be devised, or who was the person really intended to take under the will; and this appears to us to be the extent of the maxim, *ambiguitas verborum latens, verificatione suppletur.* But the cases to which this construction applies will be found to range themselves into two separate classes, distinguishable from each other and to neither of which can the present case be referred. The first class is, where the description of the thing devised, or of the devisee, is clear upon the face of the will, but upon the death of the testator it is found, that there are more than one estate or subject matter of devise, or more than one person whose description follows out and fills the words used in the will. As where the testator devises his manor of Dale, and at his death it is found that he has two manors of that name, South Dale and North Dale; or where a man devises to his son John, and he has two sons of that name. In each of these cases respectively, parol evidence is admissible to show which manor was intended to pass, and which son was intended to take. (Bac. Max. 23; Hob. R. 32. Edward Atham's case, 8 Rep. 155.) The other class of cases is that in which the description contained in the will, of the thing intended to be devised, or of the person who is intended to take, is true in part but not true in every particular. As where an estate is devised called A, and is described as in the occupation of

B, and it is found, that though there is an estate called A, yet the whole is not in B's occupation ; or where an estate is devised to a person whose surname, or christian name is mistaken ; or whose description is imperfect, or inaccurate; in which latter class of cases parol evidence is admissible to show what estate was intended, and who was the devisee intended to take, provided there is sufficient indication of intention appearing on the face of the will to justify the application of the evidence."

This extract is quoted by this court, in *Howard* v. *The American Peace Society*, above cited, as containing a clear and accurate statement of the rules of law applicable to this subject. Mr. Greenleaf lays down the rules to be, "that, where the description in the will, of the person or thing intended, is applicable with legal certainty to each of several subjects, extrinsic evidence is admissible to prove which of such subjects was intended by the testator." Greenl. Ev., § 290.

Applying these rules to the case at bar, is there a latent ambiguity arising from the introduction of the extrinsic evidence ? Does the description of each hill follow out and fill the words used in the will ? Does the description in the will apply with legal certainty to each of the hills ? or does it apply with as much certainty to one as to the other ? we think not.

In construing a will, the general rule is that the intent of the testator is to govern ; but it is the intention expressed by the will and not otherwise. To get at the intention expressed by the will, every clause and word are to be taken into consideration, because one clause is often modified and explained by another. Every implication, as well as every direct provision, is to be regarded. No clause, or material matter of description should be rejected unless clearly repugnant to and inconsistent with the other clause, or matters of description in the will. The first part of the description of the land devised, is, "a lot of land in said Newcastle, and known as the back field west of the top of the hill." The land known as the back field is devised. It is west of the top of the hill. The land known as the back field at the time the will was made is shown to be east of the hill claimed by defendant, called the back field hill. So it is clear that the description of that hill does not

follow out and fill the words used in the will. The description in the will does not apply with legal certainty to that hill. To hold that that hill is the one referred to in the will, it is necessary to reject entirely the material matter of description "known as the back field." If there was no other hill on the farm which follows out and fills the words used in the will, this part of the description might be rejected as misdescription; but it can only be rejected when shown to be necessarily repugnant to the rest of the description.

The hill claimed by the plaintiff as the one intended by the testator, follows out and fills all the words used in the will. The description in the will applies to it with legal certainty. To hold that to be the hill intended by the testator, it is not necessary to reject any part of the description in the will. None of the other calls of the will are repugnant to it. True, a line run at right angles with the north line of the farm, striking over the top of that hill, might embrace more land than the lot known as the back field, or the west end of testator's farm adjoining Deer meadow brook; but it includes all the land thus described. We think that the introduction of the extrinsic evidence, to apply the description of the estate devised to the face of the earth, raises no latent ambiguity as to which hill was intended by the testator as the monument in the east line, and that the evidence offered of the declarations of testator, made after the execution of the will, to show that he intended the back field hill, was inadmissible.

The defendant also offered to prove, that, after the decease of Henry Clark and after the will was established, Benj. F. Clark and Lishman Clark went on to the premises and established the line between the part of the farm devised to Benj. F. Clark, and the remaining part devised to Lishman Clark and Ephraim Clark 2nd, as they understood the will, adopting the back field hill as the monument intended by the testator. And he offered evidence tending to prove that that line was recognized as the dividing line by them and their grantees under whom the parties claim down to the time plaintiff purchased in 1869; and that the plaintiff recognized that line as the east line of his land soon after he purchased. This evidence was excluded. It was not admissible to explain a

latent ambiguity in the description in the devise; for we have seen that there is no latent ambiguity. The case does not fall within the class of cases where the deed or devise describes a monument not in existence, but to be erected and established by the parties, and the parties afterwards fairly erect such monument intending it to conform to the deed or devise, and by which they are bound in the same manner as if the monument had existed at the time the deed or devise was made, though the monument be so located as not entirely to coincide with the line described. The monument described in the devise was in existence at the time the will was executed.

The case, as presented by the evidence offered, is one in which the parties, acting upon an erroneous construction of the will, adopt a monument not intended by the testator, without possession according to it, of such a character, and for sufficient length of time, to give title by adverse possession. They are not thereby estopped from showing the true monument. *Tolman* v. *Sparhawk et als.*, 5 Met. 469. *Bradbury* v. *Cony*, 59 Maine, 494.

The evidence, if admitted, could have no legal effect upon the result of the suit. It was properly excluded.

The defendant offered a mortgage deed from Ephraim Clark, 2d, to Nathaniel Bryant, dated September 26, 1859, while Bryant owned the land devised to Benjamin F. Clark, in which the north line of the land conveyed by the mortgage is described thus:

"Beginning in the middle of the highway, at the south line of land of Stephen Barrett, thence north sixty-four degrees west by said Barrett lot two hundred and eighty-four rods to land of Nathaniel Bryant." He claims that two hundred and eighty-four rods from the highway extends to the back field hill, and that by taking that mortgage, Nathaniel Bryant and all persons claiming under him, are estopped from denying the back field hill to be the monument described in the devise. It is a sufficient answer to this proposition that that line extends to Nathaniel Bryant's land as a boundary, and wherever the true line of Bryant's land was, there the north line must stop, whether one hundred rods, or two hundred and eighty-four rods in length. No estoppel was created by taking that mortgage. It was properly excluded.

Under the construction which we have given to the devise, the charge of the presiding judge to the jury was favorable to the defendant, and he has no ground for exceptions.

*Exceptions overruled.*

APPLETON, C. J., WALTON, DICKERSON, DANFORTH, VIRGIN and PETERS, JJ., concurred.