ALEXANDER CHACE, RESPONDENT, *v.* JAMES M. LAMPHERE, APPELLANT.

*Land covered by each of two devises in a will — rule by which the intention of the testator is to be discovered — competency of oral statements made by him.*

A testator by his will gave to one Lamphere a farm on which he resided in the town of Austerlitz, Columbia county, known as the "Home Farm," and to one Chace another farm in the same town called the "Wooley Farm." In an action of ejectment, brought by the devisee Chace to recover possession of about twenty acres of land which had at one time constituted a part of the Wooley farm, and had thereafter, and prior to the death of the testator, been, by the construction of a fence, included in the farm which the testator had by his will devised to Lamphere, the trial court held that as, by the terms of the will, the devise to each of the devisees included in its description this parcel of land in dispute, that the rule that the later clause must prevail over the earlier one in the construction of a will should be applied, and that the land in dispute should be adjudged to be included in the piece of land last devised by the will.

*Held,* that this rule is not favored by the courts, and should be resorted to only in an extreme case.

That, in this case, the fact that the will referred to the respective pieces of property devised as the piece "on which said Lamphere now resides," and "on which farm said Chace now resides," when considered in connection with parol evidence offered as to statements made by the testator prior to his death, in respect to the separation of the piece of land in dispute from the Wooley farm, was sufficient to justify the court in determining under the evidence upon a construction of the will, which would give to one or the other of the parties to this action this piece of land.

That parol evidence, as to the declarations of the testator in regard to the separation of this piece of land from the Wooley farm, was competent, not for the purpose of determining or defining what the intentions of the testator were, but with the view of showing the condition of the farms, and the relations which the premises in dispute bore to the other lands, and the manner in which the testator had arranged and occupied the same.

*Mann* v. *The Executors of Mann* (1 Johns. Ch., 231); *Reynolds* v. *Robinson* (82 N. Y., 103) followed.

APPEAL by the defendant from a judgment rendered at the Columbia County Circuit, upon the verdict of a jury directed by the court in favor of the plaintiff, in an action brought to recover the possession in fee of certain premises described in the complaint in this action, and for $180 rental value for their use and occupation, and entered in the office of the clerk of the county of Columbia on June 30, 1888.

*R. E. Andrews*, for the appellant.

*A. F. B. Chace*, for the respondent.

INGALLS, J. :

This is an action of ejectment brought by the plaintiff to recover possession of a parcel of land of about twenty acres, and resulted in a verdict, directed by the court, in favor of the plaintiff that he recover the possession in fee of the premises, with $180 for the use and occupation, and judgment was entered upon such verdict, and the defendant appeals therefrom to this court. The plaintiff and defendant were nephews of Smith Shaw, who in the year 1871, and thereafter to his decease, was the owner of two farms, one known as the Wooley farm, which was conveyed by Samuel Wooley and wife to Sherman Griswold May 1, 1825. The same premises were conveyed by Sherman Griswold and wife to Smith Shaw May 1, 1833. The other farm was one upon which Smith Shaw resided many years previous to and at the time of his death, and was known as the Smith Shaw farm or Home farm. The farms were adjacent, and constituted one tract of land, and were used for farming purposes but cultivated as separate farms. In 1871, by some arrangement between the said Smith Shaw and the plaintiff, the latter went into the occupancy of the farm known as the Wooley farm, and continued there until the death of his uncle, Smith Shaw. The same year,

the defendant Lamphere, at the solicitation of Smith Shaw, went to reside upon the Home farm with his uncle, and cultivated that farm under an arrangement entered into between Smith Shaw and the defendant, the terms of which are not material, The defendant continued there until the death of Smith Shaw, and is still in the occupancy of the farm. The parcel of land in controversy is situated upon the west side of the Wooley farm, so called, and is adjacent to the Home farm, so designated. And it is conceded that such parcel of land was purchased by Smith Shaw as a part of the Wooley farm, and was conveyed to him by Sherman Griswold and wife, by the deed before mentioned. The parcel of land in controversy was known as the swamp or pasture lot. Soon after the defendant Lamphere went to live upon the Home farm, Smith Shaw directed the construction of a fence upon the east line of the parcel of land in dispute, which was built by Lamphere, by which that lot became included in the Home farm, and was ever after used as a part thereof. Upon the trial a witness by the name of Anna Ferguson was allowed to state a conversation between herself and Smith Shaw, which occurred in 1873, as follows :

"Q. Did you have an interview when he spoke of having taken a lot off of the Wooley farm and putting it on his own farm, and if so, when was it ? [Objected to as illegal, immaterial and improper. Objection overruled.] A. He told Mr. Lamphere that if he would move down from his place, take care of him and his sister, and do as he said, he would take that swamp lot off of the upper place and put it on the lower place, as that needed it, and as the upper place did not need it, as it had plenty, and had more land than could be used. He says : 'Now I have the lots between the two farms as I want them and where I want them, for I have them fixed.' He says : 'I have done ; now I have my mind convinced where I want them, and as I want them, between the farms ;' that he said not five weeks before his death. Q. He said that also five weeks before his death ? A. Yes, sir, the same thing." Another witness, William W. Stillman, whose deposition was allowed to be read as evidence, and contained the following, which was received under the objection of plaintiff's counsel : " Q. In 1875 did you have any talk with Smith Shaw in regard to his having taken a piece of land from one of his farms, and if so, when and where was it, and what was that conversa-

tion? [Objected to as immaterial, illegal, improper and hearsay. Objection overruled.] A. I did; it was, I think, in haying time in fall of the year, and we were on the piece of land he was talking about; he says, this is the piece of land I told you about that I took off of the Wooley farm and put it on the old farm; he said he had promised to give it to James Lamphere if he would come down and live with him; that he had established the line where the fence now was, and it was up by the barn; I asked him whose barn it was, and he said it was his, but he had given Chace the use of it; he said the old farm had no early feed and the Wooley farm had two or three pieces of early feed, and after he took this off, that left two pieces of early feed on the Wooley farm, and that was enough for that; I brought Smith Shaw to Chatham to William Daley's to get his will drawn, and had talk with him there; that was in 1875. Q. Relate the conversation? [Objected to as illegal, irrelevant, immaterial and hearsay. Objection overruled.] A. He said he was going to make his will, and he was going to will his sister Happy all that Lamphere occupied, during her life, and then he was going to give it to James Lamphere, and to give all the personal property on that place to Happy, and seven hundred dollars to Sam Holdridge; he was going to give the Wooley farm that Chace occupied to him and all the personal property that was on it; then he was going to put in his will that Chace should pay to Happy fifty dollars a year out of what he had, and his executors should get a monument for him with four hundred dollars, James Lamphere to pay two hundred, and Chace two hundred for the monument, and the bequest to be paid by them equally; I had some conversation with him about his last will; he told me how he had fixed it." On being cross-examined by plaintiff's counsel, he continued: "I moved to Spencertown the 1st day of April, 1873; I keep public house and sometimes work at mending harness; have kept public house there ever since I have lived there, except two or three years I let it out; the time I brought him to Chatham was not the last time he made a will; he made a will that day, and afterwards made another." Redirect. "Q. This lot that you were on when you and Smith Shaw were talking in 1875, was it called the swamp lot? A. It was."

This evidence was, doubtless, admitted by the trial court, not for the purpose of adding anything to the will of Smith Shaw, but for

the purpose of ascertaining the situation of the farms, and particularly in regard to the parcel in controversy, and to show how the same had been used, and for what purpose, with the view to aid in the construction which should be given to the will of Smith Shaw in regard to the premises in dispute, as a question of grave difficulty had arisen in reference to the interpretation which the will should receive, as to which of the parties to the action the swamp lot in dispute had been devised, owing to the indefinite and imperfect description of the farms devised by the will, to the parties, respectively. Both parties derive their title under the will of Smith Shaw, and the only controversy between them is in regard to the ownership of the swamp or pasture lot. The two clauses of the will by which the farms are devised to the parties, respectively, are the following:

" *Sixth.* I give, devise and bequeath to James M. Lamphere, his heirs and assigns forever, all my said farm situated in the town of Austerlitz, Columbia county, N. Y., and containing about one hundred and forty acres of land, with the appurtenances thereunto belonging, being the farm on which said Lamphere now resides, to have and to hold the same to said Lamphere, his heirs and assigns forever, subject, however, to the life estate of my said sister, Happy Shaw, therein and to the payment of the several sums and legacies hereinbefore charged against the same.

" *Seventh.* I give, devise and bequeath to Alexander Chace, his heirs and assigns forever, all my said farm, situated in the town of Austerliz, Columbia county, N. Y., and containing about one hundred and seventy-four and three-quarters acres of land, called the 'Wooley Farm,' which I purchased of Sherman Griswold, and on which farm said Chace now resides, together with the personal property now on said farm, to have and to hold the same to said Chace, his heirs and assigns forever, subject, however, to the payment of the annuity of fifty dollars each year to my said sister, Happy Shaw, with which said farm is hereinbefore charged and is hereby charged; and, also, subject to the payment of the several sums and legacies hereinbefore charged against said farm."

At the close of the evidence, and after hearing counsel, the learned justice stated, among other things, the following: " We have, then, two clauses in this will which, in my opinion, are incon-

sistent and irreconcilable. By the sixth, in unambiguous language, he devises the premises in question to James M. Lamphere; by the seventh, in language equally as definite, he devises the premises to Alexander Chace. If it were possible to reconcile these two clauses, the court should do so, and should look at the whole scope and intention of the will for that purpose. It was with that view that I admitted the testimony yesterday of the declaration of the testator, in respect to the severance of this piece of land from the Wooley farm, reserving any expression of opinion of the effect of that testimony upon the main question to be considered. If these two clauses were not free from ambiguity, I think that the testimony would aid somewhat in reconciling the inconsistency, and enable us to determine the intention of the testator, but it can have no force whatever, in my opinion, except where there is an ambiguity of language. This, then, seems to me to be a case for the application of a rule where the will contains two clauses, which, upon any rational interpretation, are irreconcilable and inconsistent, the latter clause must prevail over the former as expressing the last intent of the testator. I am aware that rule is not applied where it is possible to reasonably reconcile the two clauses, but it seems to me that here they are utterly irreconcilable. By the one he clearly devises this piece of land to the defendant, by the other to the plaintiff. I am, therefore, of the opinion that the latter clause in the will must prevail, and that the plaintiff, Alexander Chace, is entitled to the possession of the so-called pasture lot described in the complaint, and grant the plaintiff's motion, in that respect, and deny the motion for the defendant." We feel constrained to differ with the learned justice who tried the cause at the circuit, in regard to the necessity of resorting to the rule which he adopted in deciding the cause, by holding that the two clauses of the will were wholly irreconcilable, and that there was no ambiguity in the language employed in framing such clauses, and that, consequently, the parol evidence which had been received could not be considered in aid of the construction of the will. And as a necessary result that the seventh clause must be adopted as the last testamentary expression of the testator, and as conclusive in regard to the devise of the premises in controversy to the plaintiff. The rule thus invoked is

not favored and is not to be resorted to save in an extreme case, and after every other rule of construction has failed, and then only to prevent the failure of both provisions of the will for uncertainty. (*Covenhoven* v. *Shuler*, 2 Paige Ch., 123, 129 ; *Parks* v. *Parks*, 9 id., 109.) At page 124 the chancellor remarks : " I admit this rule is not 'founded upon a very satisfactory reason, and is only to be adopted from the necessity of the case." (*Ogsbury* v. *Ogsbury*, 45 Hun, 388.) In the case last cited Justice FOLLETT remarks, at page. 389 : " But the rule referred to, which Sir GEORGE JESSEL, master of the rolls, so aptly described in *Bywater* v. *Clarke* (18 Ch. Div., 19, 20) as ' the rule of thumb,' is not to be blindly followed unless the court can find nothing else to aid it to ascertain the intent of the testator."

In referring to the sixth clause of the will we perceive that the testator, in describing the farm devised to Lamphere, employs this language : " All my farm, being the farm on which said Lamphere now resides." Turning to the seventh clause we find, as a part of the description, the following : " And on which farm said Chace now resides." By the second clause of the will the testator creates a life estate for the benefit of his sister, Happy Shaw, as follows : Second. I give, devise and bequeath a life estate in the farm of land occupied by James M. Lamphere ; and I further give my sister fifty dollars each year during her natural life, to be and is hereby made a charge against and to be paid from the farm occupied by said Chace. In the third term of the will the same expression is used : " From the farm occupied by said Lamphere." Likewise in the fourth item : " From the farm occupied by said Chace." And a charge was created upon such farm to secure the payment of the legacy. In the fifth item the testator provided for the erection of a monument, and charges the expense thereof equally against the two farms, using this language : " The expense of which is made a charge equally against my two said farms occupied by said Lamphere and said Chace, and to be paid from each said farm, two hundred dollars from each." In the sixth and seventh items of the will the term employed is " on which said Lamphere now resides," " on which farm said Chace now resides." The words " resides " and " occupied " are obviously to be understood as having been used by the testator in the same sense and as having the same signification.

We are of opinion that the evidence of the witness Ferguson and that of Stillman could have been properly considered by the trial court in aid of the construction of the will. Not for the purpose of determining or defining what the intention of the testator was, but with the view of showing the condition of the farms and the relation which the premises in dispute bore to the other lands and the manner the testator had arranged and occupied the same. Such evidence could only serve a purpose in aiding the court to understand the surroundings and thereby, in all probability, be better prepared to rightly interpret and understand the expressions employed by the testator in framing the will, and, consequently, be greatly aided thereby in determining what the intention of the testator was in regard to the disposition, by his will, of the premises in question. Whether he intended that such premises should be included in the devise of the farm to Lamphere by the sixth item of the will or to Chace by the seventh item of the will under the description therein contained. Such evidence was not intended, nor could it be received, to enlarge or contradict the terms of the will or to show what was the intention of the testator, but for the purpose only which has been stated. The leading case, perhaps, upon this subject, and which is frequently cited, is *Mann* v. *The Executors of Mann* (1 Johns. Ch., 231). Chancellor KENT, at page 234, remarks: "Parol evidence cannot be admitted to supply or contradict, enlarge or vary, the words of a will, nor to explain the intention of the testator, except in two specified cases: 1. Where there is a latent ambiguity, arising *dehors* the will, as to the person *or subject meant to be described*," etc. *Reynolds* v. *Robinson* (82 N. Y., 103) is to the same effect. We think the evidence was admissible within the principle declared by the cases referred to. There exists, we think, in this case, a latent ambiguity in regard to the subject meant to be described by the testator in his will, in the particular before stated, and that, in aid of the proper construction of the will, the evidence was admissible. Considering the provisions of the will, and the seeming difficulty which attends its proper construction, and regarding all the circumstances in reference to the condition of the property sought to be devised, and the relation of the parties thereto, we have reached the conclusion that the trial court was not justified in the determination that the case was brought within the principle

which he invoked as the basis of his decision, and which we deem inapplicable to this case. We are persuaded that the case can be decided upon the ascertained intention of the testator, as deduced from the provisions of the entire will, construed in the light of the facts and circumstances proper to be considered in connection with such instrument. We perceive that the counsel for the defendant requested that the cause should be submitted to the jury. We do not deem it necessary or advisable to express any opinion upon that question, but prefer to leave it to the discretion of the trial court, and we abstain from declaring what construction the will should receive in regard to the intention of the testator in disposing of the premises in question.

The judgment must be reversed and a new trial ordered, with costs to abide the event.

LANDON, J., concurred.

LEARNED, P. J.:

I concur, except that I doubt whether that part of Stillman's evidence was proper in which he speaks of testator's intentions as to his will. This part does not appear to have been specifically objected to.

Judgment reversed, new trial granted, costs to abide event.